LISA M. BOWMAN, CA Bar No. 253843
lisa.bowman@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
Steuart Tower, Suite 1300
One Market Plaza
San Francisco, CA 94105
Telephone: 415.442.4810
Facsimile: 415.442.4870

DAVID P. THATCHER, *pro hac vice application pending*
david.thatcher@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
One Ninety One Peachtree Tower
191 Peachtree St. NE, Suite 4800
Atlanta, GA 30303
Telephone: 404.881.1300
Facsimile: 404.870.1732

Attorneys for Plaintiff
C2 EDUCATIONAL SYSTEMS, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C2 EDUCATIONAL SYSTEMS, INC., <br><br>Plaintiff, <br><br>v. <br><br>SUNNY LEE, KYUNG HYE DEBBIE HONG and SO YEON JANG, <br><br>Defendants. | Case No. <br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** <br><br>Complaint Filed: <br>Trial Date: |

Case No.
COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

## I. INTRODUCTION

Plaintiff C2 Educational Systems, Inc. ("C2" or "Plaintiff"), by and through its attorneys, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., files this Complaint for Injunctive Relief and Damages and seeks an *ex parte* Temporary Restraining Order, a preliminary injunction and monetary damages against its former employees, defendants Sunny Lee ("Lee"), Kyung Hye Debbie Hong ("Hong"), and So Yeon Jang ("Jang")(Lee, Hong and Jang are collectively referred to as "Defendants"), because Defendants formed a competing entity called Core Academics, LLC ("Core Academics") many months before they terminated their employment with C2.

## II. NATURE OF THE ACTION

1. This is an action for damages and injunctive relief based on C2's claims against its former employees for violation of the California Computer Data and Access Fraud Act ("CDAFA"), breach of fiduciary duty/duty of loyalty, and misappropriation and conversion of property.

### The Parties, Jurisdiction, and Venue

2. C2 is a Virginia company with a principal place of business, for purposes of 28 U.S.C. § 1332, located at 6465 East Johns Crossing, Suite 100, Johns Creek, Georgia 30097.

3. Defendant Sunny Lee ("Lee") is an adult citizen and resident of the state of California residing at 1090 Bentoak Lane, San Jose, Santa Clara County, California 95129.

4. Defendant Kyung Hye Debbie Hong ("Hong") is an adult citizen and resident of the state of California residing at 5822 Charlotte Drive, Apartment 3410, San Jose, Santa Clara County, California 95123.

5. Defendant So Yeon Jang ("Jang") is an adult citizen and resident of the state of California residing at 982 Mandeville Street, Manteca, San Joaquin County, California 95337.

6. Core Academics, LLC ("Core Academics") is a California limited liability company with its principal place of business located at 1072 South de Anza Boulevard, #B101, San Jose, California 95129. Core Academics is a member managed limited liability company, and its members are Lee, Hong, and Jang.

7. The Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. § 1332 in that there is complete diversity of citizenship between C2, on the one hand, and Lee, Hong, and Jang, on the other; and the matter in controversy between C2, on the one hand, and Lee, Hong, and Jang, on the other, exceeds $75,000 exclusive of interest and costs.

8. Venue of this action is proper in this judicial district and division because a defendant resides in this district and all of the defendants are residents of the state of California, and a substantial part of the events of omissions giving rise to the claims occurred in this district.

## III. FACTUAL ALLEGATIONS

9. C2 is engaged in the business of providing academic tutoring, standardized test preparation, and college admissions counseling. C2 has over 180 centers across the United States serving over 12,000 students and their families.

10. C2 owns and operates its centers typically in retail locations. At each center, C2 employs a Center Director, Program Lead, and various tutors.

11. C2's centers are grouped into districts, which are managed by District Managers, and districts are grouped into regions, which are managed by Regional Directors.

### Defendants' Employment With C2

12. Lee became employed by C2 on January 14, 2008, and resigned from her employment on February 14, 2018.

13. During her employment with C2, Lee held the position of Center Director of C2's Cupertino, California center (the "Cupertino Center").

14. C2's Cupertino Center was located at 1072 South de Anza Boulevard, San Jose, California 95129 at the time Lee was hired, and was moved to 1139 South de Anza Boulevard, San Jose, California 95129 in October 2017.

15. Hong became employed by C2 on February 15, 2014, and resigned from her employment on February 9, 2018.

16. During her employment with C2, Hong held the position of Center Director of C2's Almaden, California center (the "Almaden Center").

17. C2's Almaden Center was located at 836 Blossom Hill Road, San Jose, California 95123.

18. Jang became employed by C2 on August 6, 2008, and resigned from her employment on February 3, 2018.

19. During her employment with C2, Jang held the position of District Manager of the NorCal East district. The Almaden Center was located in the NorCal East district.

20. Mikyoung Sung ("Sung") was hired by C2 on January 14, 2008, and resigned from her employment on February 6, 2018. During her employment, Sung worked as the Program Lead at the Cupertino Center, and reported directly to Lee. Upon information and belief, Sung is now an employee of Core Academics.

### Lee, Hong, and Jang Were Provided Access To C2's Confidential and Proprietary Information Through Their Employment with C2

21. While employed by C2, Lee, Hong, and Jang were introduced to C2's customers and its proprietary curriculum, and operated their respective centers or district with significant autonomy.

22. As Center Directors, Lee and Hong were responsible for generating leads, enrolling students, marketing the services offered by C2, managing the tutoring services provided at their centers, and managing the operational and financial performance of their centers.

23. Similarly, Jang also was responsible at the district level for the operation and financial performance of the centers in her district.

24. Center Directors and District Managers are compensated with an annual salary and additional incentive compensation. The incentive compensation is paid monthly and quarterly, and is based on a comparison of the center or district's performance compared with targets set by C2.

25. C2 has prepared a Curriculum that provides its employees with instructions for assessing and providing tutoring to its students. C2 has spent years developing this Curriculum before and during the time that Lee, Hong, and Jang worked for C2.

26. In addition, C2 provides its Center Directors and District Managers with computers for use in their C2 employment. On August 28, 2014, C2 purchased a 13" MacBook Air for Jang to use in her work as District Manager. And on January 2013, C2 purchased a laptop with serial number CND22929DW for Lee to use in her work as Center Director.

27.	Lee, Hong, and Jang also were provided access to a C2 email accounts. Lee's email address associated with her C2 account was sunny.lee@c2educate.com. Hong's email address associated with her C2 account was debbie.hong@c2educate.com. And Jang's email address associated with her C2 account was sophia.jang@c2educate.com. Lee, Hong, and Jang's email accounts were provided to them through Gsuites, which also included, among other things, calendars, and cloud based storage for documents, sheets, forms and slides.

28.	Lee, Hong, and Jang also were provided with access to C2's leads database, known as Smart2, throughout their employment and each regularly used it in connection with their C2 employment.

29.	Smart2 is a dynamic database of all of C2's customer leads. Leads are input in Smart2 either by one of C2's centers or through its webpage, and the lead is then monitored and utilized in order to generate enrollment of students.

30.	New leads are input in Smart2 when a potential customer first contacts C2, and the lead is managed in Smart2 throughout the period in which the lead is pending, and up to the time the lead is either converted to an enrolled student or archived if the lead does not result in a sale.

31.	Lee, Hong, and Jang accessed and used Smart2 throughout their employment and up to the dates of their respective resignations.

### C2's Cupertino Center

32.	C2's Cupertino Center is one of C2's highest performing centers, both in terms of the number of students and revenue generated.

33.	During her C2 employment, Lee regularly met or exceeded her monthly bookings budget. C2 measures the performance of centers by comparing the center's bookings to a budgeted amount. Lee's center regularly exceeded the budgeted amount, and exceeded the budget by more percentage points than most other centers.

34.	Due to the growth and capacity of the Cupertino Center, C2 decided to relocate the center to a larger space.

35.	C2 scheduled the move of its Cupertino Center to its new location at 1139 South de Anza Boulevard, San Jose, California 95129 to occur in late October 2017. Due to certain delays

with the new location, the first day of class at the new location occurred on November 6, 2017, and C2 held a grand opening of the new location on November 18, 2017.

### C2 Employment Policies

36. In connection with their C2 employment, Lee, Hong, and Jang each was provided access to the C2 Education Employee Handbook (the "Handbook"), and each of them signed and returned to C2 an Employee Handbook Acknowledgement and Confirmation of Receipt (the "Acknowledgement").

37. By signing the Acknowledgement and continuing employment with C2, Lee, Hong, and Jang each agreed that their employment was "governed by the policies described in [the] Handbook [and that they had] . . . read and . . . understand all information it contains."

38. In addition, Lee, Hong, and Jang each agreed, by signing the Acknowledgement, that they, "[i]mmediately upon the termination of [their] employment with [C2], must return all Company-owned property, including, but not limited to, confidential or proprietary business information of the Company, computer files, diskettes, documents (electronic or otherwise), computer databases, manuals, computer equipment, computer software, files, money, securities, keys, credit cards, handbooks, financial and other reports, notes and all other information or property obtained or used by [them] in the course of [their] employment."

39. In addition, the C2 Handbook contains a section entitled Limitations on Use of the Company's Electronic Communications Systems, which provides in relevant part, that "the Company's 'electronic communications systems,' which include but are not limited to email, . . . and other portable or desktop hardware devices (including but not limited to desktop computers and laptop computers) or software are provided by C2 Education to help employees carry out their business activities. [C2's] electronic communications systems are the Company's property, installed and maintained to facilitate communications related to C2 Education business. These systems are to be used for legitimate C2 Education business purposes."

40. Furthermore, the Handbook provides that C2 "prohibits employees from using its electronic communications systems to engage in any behavior that could damage the Company, including, without limitation, . . . [p]romoting private or personal business activity [or] [d]isclosing

proprietary, confidential or nonpublic Company information . . ., except for legitimate business purposes."

### Defendants' Competitive Activities While Remaining Employed By C2

41. Defendants organized and, upon information and belief, operated a competing business to C2 for months prior to resigning from their employment with C2.

42. When each of the Defendants finally notified C2 that they were resigning, each Defendant made false statements to management of C2 concerning the reasons for their resignation and their plans for work after leaving C2.

43. Defendants refused to tell C2 the true reasons for their resignations and hid their plans to run a competing business down the street from the Cupertino Center and in C2's former space in order to cover their tracks and avoid being caught before leaving C2.

### Defendants Organized Core Academics, LLC Almost 6 Months Prior To Resigning Their Employment With C2

44. In fact, Lee, Hong, and Jang began preparing to compete with C2 prior to September 26, 2017, because on that date they organized Core Academics, LLC.

45. According to records filed with the California Secretary of State, Core Academics, LLC was organized on September 26, 2017, and on December 22, 2017, Core Academics disclosed that its members are Lee, Hong, and Jang.

46. As of the filing of this Complaint, Core Academics remains an active California member managed limited liability company.

47. Upon information and belief, Core Academics engaged in business that was competitive with C2 beginning on September 26, 2017, and continuing up to and past the dates on which Lee, Hong, and Jang resigned from their employment with C2.

48. C2 did not learn of Lee, Hong, and Jang's competing business until after their resignations in February 2018.

### Lee and Hong Delete All Data In Their C2 Email And G Suite Accounts

49. After their resignations and upon learning of their competing business, C2 attempted to capture and review Lee, Hong, and Jang's C2 email accounts.

50. Although C2 was able to obtain access to and copies of each of their G Suite accounts, which included their email accounts, C2 learned from reviewing the email accounts that there was no data in either account prior to February 14, 2018, Lee and Hong's last day of work.

51. Upon information and belief, Lee and Hong deleted all of the data from not only their C2 email accounts, but also the entirety of their C2 G Suite accounts, which included documents, spreadsheets, slides and other C2 business documents, on their last day of work for C2, February 14, 2018.

52. By way of comparison, C2 was able to obtain and review Jang's C2 G Suite account and determined that it contained approximately 113,000 items, which included emails, attachments to emails, and the like.

### Jang Forwards Confidential C2 Information To Her Personal Email

53. In reviewing Jang's account, C2 also learned that on at least two occasions, Jang forwarded emails containing C2 business to her personal email. On February 1, 2018, Jang forwarded an email she received from the C2 West Portal containing as an attachment a new PreACT 2018 - Form 17A booklet with answer key.

54. Jang copied her personal email when responding to a then current C2 teacher concerning C2 matters. In the email string, after Jang tells the C2 teacher on January 31, 2018 that she will "be wrapping up her time here at C2," the C2 teacher asks Jang to let him know if the "college admission essay clinic idea that you were telling me about last fall comes together." Jang responds on February 1, 2018 saying "Definitely!! I'll keep you posted!!"

### Lee And Jang Abscond With Their C2 Computers And Refuse To Return

55. C2 purchased laptop computers for Lee and Jang to use in their employment with C2. Lee and Jang used the laptops purchased by C2 to conduct C2's business and to access their G Suite accounts and C2's Smart2 database, among other things. Lee and Jang have failed and refused to return C2's laptops immediately upon termination of their employment, despite C2's policies requiring them to do so.

56. Despite C2's policy requiring the return of company property, Lee and Jang failed to return their C2 computers and, thereby, have refused to return C2's property.

**Deterioration of The C2 Cupertino Center's Leads And Financial Results**

57. C2 measures its centers' financial results on monthly and quarterly bases, among others. Historically, C2 has run its largest promotions in the month of November. As a result, the last quarter of the calendar year is usually the largest financial quarter for C2.

58. In the last quarter of 2017, the Cupertino Center turned in strong financial results and substantially beat its budget for the month of November - the month in which C2 ran its annual promotions.

59. For the first three months of 2018, though, the Cupertino Center's financial results were abysmal, with its percentage of budget dropping by almost half compared to the monthly averages for the prior 18 months.

60. In addition, the number of center entered leads dropped precipitously. For the period from October 2017 through February 2018, the number of centered entered leads dropped almost in half.

61. There is no basis on which to conclude that the number of leads actually dropped. Instead, Lee and Young stopped entering the leads they received at the Cupertino Center during this time.

62. During the period December 2017 through February 2018, the percentage of archived to enrolled leads doubled. There is no basis on which to conclude that the number of pending leads that decided to decline to enroll increased during this time period. Instead, Lee and Young increased the number of times they changed the status of pending leads in Smart2 to archived status beginning in December 2017 and continuing through their resignations in February 2018.

63. Lee received a very large incentive compensation payment as a result of the strong financial performance of her center during the last quarter of 2017, primarily resulting from the large number of enrollments and renewals generate from the promotions that were effective in November 2017.

64. In order to receive the incentive compensation, Lee (and Hong) were required to be employed at the time the incentive payments were made in late January 2018.

1   65.   Lee submitted her resignation on January 31, 2018.

2   66.   When C2 enrolls students, it requires that the customer sign and agree to C2's Terms and Conditions of Purchase of Services (the "Terms and Conditions"). Among other things, the Terms and Conditions sets forth C2's Refund Policies.

67.   Under no circumstances does C2's Refund Policies allow customers to receive a full refund. Instead, refunds are limited to a percentage of the total tuition paid based on the amount of purchased instructional hours that have been completed, with the maximum refund being 70% of the total tuition paid (when less than 1/6 of the tutor instructional hours purchased have been completed).

68.   After Lee had left C2, C2 learned that Lee had approved numerous refund requests that requested refunds of 100% of the tuition paid, and left those approved requests at the Cupertino Center.

69.   In addition, after discussing certain of the refund requests with the customers who made them, C2 learned that during the last quarter of calendar year 2017, Lee enrolled students but omitted the page of C2's Terms and Conditions containing the Refund Policies from the document signed by customers, thus arguably altering the applicable refund policy applicable to those enrollments.

70.   Lee thereby not only arguably altered the terms of the agreement pursuant to which these customers purchased tutoring service, but also provided a valuable benefit to Core Academics and made it easier for Core Academics to compete with C2's Cupertino Center.

71.   As a result of Lee's improper actions while employed by C2, C2's refunds during the month of March 2018 were increased over 500% over the prior three months combined.

**The Core Academics' Center**

72.   At some point either before or after C2 moved out of its space located at 1072 South de Anza Boulevard, San Jose, California 95129, Core Academics leased the exact same space C2's Cupertino Center had occupied for years. After leasing the space, Core Academics remodeled the space, ordered and installed Core Academics signage, and ultimately opened its business in that space.

73. Upon information and belief, Lee, Hong, and Jang spent a significant amount of time while they were still employed by C2 to engage with landlords, contractors, and signage vendors to lease, build out, and install signage on the space that would become Core Academics' center.

74. Lee, Hong, and Jang knew at least as early as September 26, 2017 that they no longer intended to continue their employment with C2 and, instead, to compete with C2 in the Cupertino market.

75. Core Academics prominently displays the names of its teachers on a wall inside the door of its facility, which is clearly visible from the outside of the center. As of the filing of this Complaint, Core Academics displays the names of Dr. Li, Mark, Nelson, Sophia, Hanna, and Joseph as its teachers. Upon information and belief, each and every current Core Academics teacher is a former teacher and employee of C2.

76. On her last day of work for C2 on February 14, 2018, Lee was working with Pam Dhillon, Regional Manager, and told Ms. Dhillon that she should leave C2 because she would not want to deal with everything that would happen after Lee left C2. Lee had told representatives of C2 that she wished to stay home and rest after resigning, but, in fact, already had a competing business.

77. Core Academics was organized on September 26, 2017, but its formation had begun weeks, if not longer, prior to its organization.

78. Defendants purchased the domain www.coreacademic.com on or about September 15, 2017.

79. Core Academics' name servers were updated from Go Daddy to Wix on January 27, 2018, and then changed at Wix on or about February 5, 2018.

80. The earliest cached view of live Core Academics' web pages is February 22, 2018.

81. Upon information and belief, Core Academics' web page was completed and online prior to February 14, 2018.

82. Since at least February 22, 2018, Core Academics has advertised on its web page that it provides the same services as C2: Standardized test preparation, tutoring, and college

admission counseling.

83. In addition, the colors and arrangement of Core Academics' logo is very similar to that of C2, in that it uses a blue background and accentuates the "O" in Core in red. Similarly, C2's logo is comprised of the words C2 Education, with the word "Education" in blue and the word "C2" in red.

84. Upon information and belief, Defendants have held themselves out to prospective customers as C2 staff, even though their employment with C2 has ended and they are now members of Core Academics.

## **COUNT I - BREACH OF DUTY OF LOYALTY**

85. C2 adopts and realleges the allegations contained in paragraphs 1-84 as if fully set forth herein.

86. The conduct of Lee, Hong, and Jang prior to their separation from employment with C2, both individually and collectively, constitutes a breach of their fiduciary duties and duties of loyalty owed to C2.

87. Lee, Hong, and Jang's breach of fiduciary duties was intentional, willful, wanton, and in reckless disregard for the rights of C2.

88. Lee, Hong, and Jang's conduct has caused C2 to suffer damages in an amount not yet determined as a result of their breach of their respective fiduciary duties to C2. C2 is entitled to recover from Lee, Hong, and Jang, jointly and severally, the full amount of these damages once they are determined.

89. Lee, Hong, and Jang are not entitled to the salary and other compensation that they were paid by C2 during the period in which they breached their fiduciary duties and duties of loyalty to C2. Lee, Hong, and Jang must disgorge and return all payments made to them by C2 during the period of their respective disloyalty.

90. Lee, Hong, and Jang's breach of their fiduciary duties and duties of loyalty was in willful, wanton, malicious and reckless disregard of those duties so that punitive damages and attorney's fees should be imposed on Lee, Hong, and Jang in an amount to be shown at trial.

## COUNT II - VIOLATION OF CALIFORNIA COMPUTER DATA AND ACCESS FRAUD ACT

91. C2 adopts and realleges the allegations contained in paragraphs 1-90 as if fully set forth herein.

92. During their employment with C2, Lee, Hong, and Jang knowingly accessed and without permission altered, damaged, deleted, destroyed or otherwise used C2's data, computers, computer systems, or computer network in order to devise or execute a scheme or artifice to defraud, deceive or extort, and to wrongfully control or obtain money, property, or data.

93. During their employment with C2, Lee, Hong, and Jang knowingly accessed and without permission altered, damaged, deleted, or destroyed C2's data, which resides or exists internal or external to C2's computers, computer systems, or computer network.

94. The conduct of Lee, Hong, and Jang as set forth above was malicious, intentional, willful, wanton, and in reckless disregard to the rights of C2.

95. C2 has suffered actual damages in an amount not yet determined as a result of the conduct, individually and collectively, of Lee, Hong, and Jang. C2 is entitled to recover from Lee, Hong, and Jang, jointly and severally, the full amount of these sums once they are determined.

96. C2 is further entitled to recover from Lee, Hong, and Jang, jointly and severally, punitive damages and attorney's fees in an amount to be shown at trial.

## COUNT III - MISAPPROPRIATION AND CONVERSION OF PROPERTY

97. C2 adopts and realleges the allegations contained in paragraphs 1-96 as if fully set forth herein.

98. Lee, Hong, and Jang have wrongfully taken or retained possession of property owned by C2 and has wrongfully refused to return such property to C2.

99. Lee, Hong, and Jang's conduct in misappropriating and converting the property of C2 as set forth herein, and potentially otherwise and not known to C2 at this time, was malicious, intentional, willful, wanton, and in reckless disregard to the rights of C2.

100. C2 has suffered actual damages in an amount not yet determined as a result of the conduct, individually and collectively, of Lee, Hong, and Jang. C2 is entitled to recover from Lee,

Hong, and Jang, jointly and severally, the full amount of these sums once they are determined.

101. C2 is further entitled to recover from Lee, Hong, and Jang, jointly and severally, punitive damages and attorney's fees in an amount to be shown at trial.

102. C2 has been damaged as a result of the misappropriation of its property by Lee, Hong, and Jang. Further, the misappropriation of its property subjects C2 to a pending and ongoing threat of immediate and irreparable harm, which harm will continue unless a temporary restraining order and preliminary injunction issue mandating the return of C2's property, and all copies and derivatives thereof, and prohibiting any further use of the same.

103. By deleting all of the data associated with their C2 G Suite and email accounts, Lee and Hong have shown that they have a history of disposing of evidence, and that it is likely they will further alter or delete data if provided with notice prior to the issuance of a temporary restraining order.

## **PRAYER FOR RELIEF**

WHEREFORE, C2 demands that judgment be made and entered in its favor against Lee, Hong, and Jang as follows:

 a) Entry of an *ex parte* temporary restraining order authorizing the temporary seizure of computer equipment in the possession of Defendants, including without limitation C2's laptops used by Lee and Jang during their C2 employment;

 b) Entry of temporary, interlocutory, and permanent injunctions requiring Defendants to return to C2 all of its property, including all information or tangible items in whatever form, and all copies or derivatives thereof;

 c) Award C2 actual and compensatory damages in an amount to be determined at trial;

 d) Award C2 exemplary damages in an amount to be determined at trial;

 e) Award C2 punitive damages in an amount to be determined at trial;

 f) Award C2 all costs and attorney's fees it incurs in the prosecution of this lawsuit; and

 g) Award C2 interest as allowed by law; and

h)  Grant such other and further relief as this Court in its judgment deems just and appropriate.

## JURY DEMAND

C2 demands a jury on all issues so triable.

DATED: May 17, 2018

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ *Lisa M. Bowman*
    Lisa M. Bowman
    David P. Thatcher
    Attorneys for Plaintiff
    C2 EDUCATIONAL SYSTEMS, INC.

34125467.2