UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C2 EDUCATIONAL SYSTEMS, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>SUNNY LEE, et al.,<br><br>    Defendants. | Case No. 18-cv-02920-SI<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 8 |

On July 6, 2018, the Court held a hearing on plaintiff's motion for a temporary restraining order ("TRO") and order to show cause why a preliminary injunction should not be issued. For the reasons set forth below, the Court DENIES the motion for a TRO but GRANTS the request for expedited discovery.

**BACKGROUND**

Plaintiff C2 Educational Systems, Inc. ("C2") seeks a temporary restraining order against defendants Sunny Lee, Kyung Hye Debbie Hong, and So Yeon Jang related to defendants' alleged formation of a competing entity months before defendants terminated their employment with C2. Dkt. No. 1. ("Compl.") at 1. According to the complaint, "C2 is engaged in the business of providing academic tutoring, standardized test preparation, and college admissions counseling." *Id.* ¶ 9. C2 has over 180 centers nationwide. *Id.* This includes the Cupertino and Almaden Centers located in San Jose, California. *Id.* ¶¶ 9, 14, 16.

As alleged in the complaint, defendants Lee, Hong, and Jang, worked for C2 for ten, four,

and nine and a half years, respectively.[1]  *Id.* ¶¶ 12, 15, 18.  In September 2017, while still employed by C2, they formed an entity called Core Academics, LLC.  *Id.* ¶¶ 44-45.  Defendants each resigned from C2 in February 2018.  *Id.* ¶¶ 12, 15, 18.  Core Academics now competes with C2, employing former teachers and employees of C2, using similar signage, and holding its staff "out to prospective customers as C2 staff[.]"  *Id.* ¶¶ 47, 75, 82-84.  Core Academics also occupies "the exact same space C2's Cupertino Center had occupied for years[,]" after C2 vacated that office space in November 2017.  *Id.* ¶¶ 35, 72.

Plaintiff alleges that it has suffered financially because of actions defendants undertook while still employed at C2.  For instance, although the Cupertino Center "is one of C2's highest performing centers," in the first quarter of 2018, "the Cupertino Center's financial results were abysmal[.]"  *Id.* ¶¶ 32, 59.  Its number of "leads" was cut almost in half from October 2017 through February 2018.[2]  *Id.* ¶ 60.  Plaintiff also alleges that defendant Lee approved numerous refund requests to customers at 100% of the tuition paid, even though C2's refund policies never allow a refund of more than 70% of a customer's tuition.  *Id.* ¶¶ 67-68.  During the last quarter of 2017, Lee allegedly enrolled students but omitted the page of the terms and conditions that capped refunds at 70% of tuition, thereby "provid[ing] a valuable benefit to Core Academics and ma[king] it easier for Core Academics to complete with C2's Cupertino Center."  *Id.* ¶¶ 66-70.  As a result, C2's refunds during March 2018 increased more than 500% from the prior three months combined.  *Id.* ¶ 71.

Plaintiff further alleges that, as employees of C2, defendants had access to G Suites, which housed defendants' work email accounts as well as "calendars, and cloud based storage for documents, sheets, forms and slides."  *Id.* ¶ 27.  On their last day of employment in February

---

[1] The complaint also describes the employment history of Mikyoung Sung, but does not name her as a defendant nor describe her role in any of the violations alleged.  *See* Compl. ¶ 20.

[2] New "leads" are entered into a database called Smart2 when a potential customer first contacts C2.  Compl. ¶¶ 29-30.  The lead is then "either converted to an enrolled student or archived if the lead does not result in a sale."  *Id.* ¶ 30.  Plaintiff alleges that from December 2017 through February 2018 "the percentage of archived to enrolled leads doubled" because defendant Lee and "Young" increased how often they changed a lead's status to archived.  *Id.* ¶¶ 61-62.  "Young" is not mentioned elsewhere in the complaint.

2

2018, defendants Lee and Hong allegedly deleted the entirety of their G Suite accounts, including all of the data from their work email. *Id.* ¶ 51. Defendant Jang did not delete her G Suite account, which contained approximately 113,000 items. *Id.* ¶ 52. By examining Jang's work emails, plaintiff has since learned that Jang forwarded emails to her personal email account on at least two occasions, once to send herself "a new PreACT 2018 – Form 17A booklet with answer key" and another time telling a C2 teacher that Jang will keep him posted "if the 'college admission essay clinic idea that [Jang was] telling [him] about last fall comes together." *Id.* ¶¶ 53-54. In addition, defendants Lee and Jang allegedly "have failed and refused to return" the laptop computers that C2 purchased for them and that pursuant to company policy should have been returned immediately upon their termination. *Id.* ¶¶ 55-56.

Plaintiff filed this lawsuit on May 17, 2018. Dkt. No. 1. Plaintiff brings this suit in federal court on the basis of diversity jurisdiction, under 28 U.S.C. § 1332, because plaintiff is a Virginia company with its principal place of business in Georgia, and defendants are citizens of California. *Id.* ¶¶ 2-5, 7. Plaintiff cites three claims for relief: (1) breach of the duty of loyalty, (2) violation of the California Computer Data and Access Fraud Act, and (3) misappropriation and conversion of property.

On June 8, 2018, plaintiff filed the present ex parte application for a temporary restraining order and order to show cause why a preliminary injunction should not be issued. Dkt. No. 8 ("Mot. for TRO"). Plaintiff asks that the Court order defendants:

    (a) to return "any and all documents and information, in whatever form, including, but not limited to, any computer disks or hard drives that contain information pertaining to C2's customers, services, prices, operations, or financial records . . . .";

    (b) to return all of C2's property, including "C2's hard copy files" and the laptop computers that C2 purchased for Lee and Jang;

    (c) "to produce to counsel for C2 for inspection each Defendant's personal and work email account(s), servers, hard drives, computer(s), mobile devices, PDAs, USB drives and other computer equipment utilized by any Defendant . . . during the period September 1, 2017 to the present . . . ." Defendants' email accounts and other electronic

3

devices would then be turned over to an independent forensic computer expert, who will "ensure that none of C2's confidential information, trade secrets, or other data or information . . . exists on such devices."

(d) to return all documents "that contain any confidential information acquired by any Defendant from or through C2";

(e) "to identify any Internet, Cloud-based or Web-based site which she has used since September 1, 2017, and provide sufficient identifying information about the nature and use of the site for a third party subpoena to issue, where any C2's [sic] data and/or information has been transferred, stored or kept by any Defendant at any time";

(f) to provide the independent forensic examiner with access "to each and every email account each Defendant has used since September 1, 2017, including authorizing the email hosts (Gmail, Yahoo, hotmail, and the like) to provide all data from their servers so that such email accounts may be imaged and examined . . .";

(g) "to preserve all evidence until such time as the Court has had the opportunity to hear the merits of this case"; and

(h) "to provide a Declaration to the Court that she has complied with the obligations set forth above."

*Id.* at 1-3.

On June 12, 2018, the Court issued an order finding that plaintiff had not met the requirements for proceeding with its motion on an ex parte basis, and ordered that plaintiff provide notice of the pending TRO motion and meet and confer with defendants regarding a hearing date. Dkt. No. 12. After effecting service, plaintiff filed a letter requesting a hearing, which the Court scheduled for July 2. Dkt. No. 20. On the parties' stipulation, the Court moved the hearing date to July 6, 2018. Dkt. No. 29. Defendants did not file an opposition brief but were represented by counsel, who appeared at the hearing via telephone. This Order now follows.

## LEGAL STANDARD

"[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear

showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). "The standard for issuance of a temporary restraining order is the same as that for issuance of a preliminary injunction." *Burgess v. Forbes*, No. C 09-629 JF (HRL), 2009 WL 416843, at *2 (N.D. Cal. Feb. 19, 2009); *see also Jones v. H.S.B.C. (USA)*, 844 F. Supp. 2d 1099, 1099 (S.D. Cal. 2012). In order to obtain a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citations omitted). "Alternatively, the plaintiff may demonstrate that the likelihood of success is such that 'serious questions going to the merits were raised and that the balance of hardships tips sharply in the plaintiff's favor,' so long as the other two elements of the *Winter* test are met." *Fid. Brokerage Servs. LLC v. Rocine*, No. 17-CV-4993-PJH, 2017 WL 3917216, at *3 (N.D. Cal. Sept. 7, 2017) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32, 1135 (9th Cir. 2011)).

## DISCUSSION

On the current record, the Court finds that the "extraordinary remedy" of a TRO is not warranted here. *See Winter*, 555 U.S. at 22. The Court is reluctant to opine on plaintiff's likelihood of success on the merits without the benefit of an opposition brief from defendants. It need not reach this question, however, because the other three elements weigh against granting a TRO. *Cf. Fyock v. Sunnyvale*, 779 F.3d 991, 996 (9th Cir. 2015) (affirming district court's denial of TRO because plaintiff failed to demonstrate first element for preliminary injunction and thus declined to reach remaining elements) (citations omitted). The Court will thus DENY plaintiff's motion for a TRO. Nevertheless, the Court will permit the parties to proceed with discovery on an expedited basis and herein reminds defendants of their obligation to preserve documents.

### I. Plaintiff is Not Likely to Suffer Irreparable Harm Without a TRO.

Plaintiff argues that it is likely to suffer irreparable harm without a TRO because "Defendants' permanent deletion of data from their accounts constitutes irreparable harm." Mot.

5

United States District Court
Northern District of California

1 for TRO at 19. Plaintiff also argues that "its leads from the Cupertino center diminished and that it is experiencing an ongoing wave of refunds as a result of the Defendants' competitive conduct both during their employment and at the present." *Id.* at 20.

However, nothing in the facts presently before the Court indicates that there is an ongoing risk of harm if a TRO does not issue. "A preliminary injunction is . . . a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Textile Unlimited, Inc. v. A. BMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001) (citation omitted). At this point, it appears that any ongoing harm is a result of defendants' past conduct rather than something that can be remedied with a TRO. Defendants allegedly formed their competing business in September 2017, set into process certain practices during their employment at C2, and then left C2 in February 2018. Plaintiff has put forth nothing to show that the violations alleged in the complaint continue to this day.

This is not like the case of *Livewirecyber, Inc. v. Lee*, on which plaintiff relies. *See* Mot. for TRO at 19 (citing *Livewirecyber, Inc., v. Lee*, No. CV 17-00645-AB, 2017 WL 5640525 (C.D. Cal. Feb. 10, 2017)). In that case, the district court granted the plaintiff's application for a TRO, where a former employee formed a competing education consulting business. The plaintiff "presented substantial circumstantial evidence that Defendants accessed Plaintiff's email account to intercept email from Plaintiff's current and prospective clients so that Defendants could solicit these clients . . . ." *Livewirecyber*, 2017 WL 5640525, at *2. The plaintiff tested this theory by creating email accounts for fake customers and then emailing the plaintiff. The fake accounts thereafter received solicitation emails from the defendants "anywhere between one hour and several weeks" later. *Id.*

Unlike in *Livewirecyber*, where defendants' illegal conduct was ongoing, the conduct complained of here occurred in the past. Plaintiff argues that defendants caused irreparable harm by permanently deleting data from their C2 accounts, *see* Mot. for TRO at 19, but plaintiff also alleges that Lee and Hong deleted this data "on their last day of work for C2, February 14, 2018." *See* Compl. ¶ 51. This act, which was accomplished over four months ago according to plaintiff, cannot constitute irreparable harm for purposes of a TRO. Likewise, any acts that resulted in

6

1  diminished leads or violations of plaintiff's refund policy took place while defendants were still
2  employed at C2. *See id.* ¶¶ 60-62, 67-69. "[P]laintiffs seeking preliminary relief [must]
3  demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 55 U.S. at 22
4  (emphasis added); *see also Schrier v. Univ. of Co.*, 427 F.3d 1253, 1267 (10th Cir. 2005) ("The
5  purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from
6  irreparable injury that will surely result without their assistance."). Plaintiff has failed to show
7  such a likelihood of future irreparable harm here.[3]

The status quo today is that Core Academics exists as a competing business to C2. At this point, it is unclear that plaintiff's harm could not be remedied by money. Injunctive relief is available only where remedies at law are inadequate. *See Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013). Harm based on monetary injury and lost revenue "is not normally considered irreparable." *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980).

## II. The Balance of Equities Does Not Tip in Plaintiff's Favor.

In balancing the equities, the Court "must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. Here, if the TRO is granted, defendants will suffer from having to turn over numerous personal documents and information. If the Court denies the TRO, plaintiff is left in the same position that it is currently in, and the suit against defendants will proceed on its merits.

Plaintiff argues that its requested relief "is narrowly tailored," but the Court disagrees. *See* Mot. for TRO at 1. What plaintiff characterizes as a request for a TRO is actually a broad discovery request, with the possible exception of the request for the return of the company laptops, which the Court addresses below. If the Court issued the TRO plaintiff seeks, it would not be to

---

[3] Plaintiff's actions since filing suit also indicate that any further threat of harm is not immediate. Plaintiff filed suit on May 17, 2018, stating that it wished to move for a TRO. Compl. at 1, 13. Plaintiff did not actually move for a TRO until three weeks later, on June 8, 2018. *See* Mot. for TRO.

7

preserve the status quo for a short amount of time, as a TRO is intended to do. Rather, granting this TRO would require defendants to turn over indefinitely troves of documents that include personal email accounts and cell phones. Plaintiff seeks, for instance, an order that defendants "produce to counsel for C2 for inspection each Defendant's personal and work email account(s), servers, hard drives, computer(s), [and] mobile devices . . . utilized by any Defendant . . . during the period September 1, 2017, to the present . . . ." *Id.* at 1-2. Plaintiff further wants defendants to "provide access to [a] forensic examiner . . . to each and every email account each Defendant has used since September 1, 2017" and to authorize Google, Yahoo, Hotmail, etc. "to provide all data from their servers" so that defendants' email accounts "may be imaged and examined . . . ." *Id.* at 2-3. Plaintiff has cited no authority, nor has the Court found any, showing that a TRO is appropriate not for the purposes of maintaining the status quo but for the purpose of allowing discovery to proceed in such a unilateral manner.

Because plaintiff asks the Court to require defendants to take specific actions (i.e., to turn over their email accounts and electronic devices and to return laptop computers and any and all "confidential information"), what it seeks amounts to a mandatory injunction.[4] "A mandatory injunction orders a responsible party to 'take action.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (quoting *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996) (internal quotation marks omitted)). Because mandatory injunctions "go[] well beyond maintaining the status quo" they are "particularly disfavored." *Id.* (citations omitted). Thus, "mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" *Id.* (citations omitted). On the current facts, the Court finds no threat of "extreme or very serious damage" that warrants issuing the TRO that plaintiff has crafted here.

**III.    The Public Interest Would Not Be Served By a TRO Here.**

Nor would it be in the public interest to permit such a broad TRO to issue. Although

---

[4] Plaintiff does not define the term "confidential information" in its TRO request.

8

plaintiff is correct that the public has an interest in the proper enforcement of the law, *see* Mot. for TRO at 20-21, the interest here is counterbalanced by the public's interest in protecting competition in the marketplace. The Court does not have enough information at this time to know whether plaintiff's allegations are valid or whether plaintiff is bringing this lawsuit to eliminate a competitor. The Court would be inclined to find the public interest factor to be neutral, were it not for the broad scope of plaintiff's TRO motion. In this case, the scope of plaintiff's request weighs against the public interest. To allow a litigant to obtain access to the opposing side's personal email accounts, computers, and mobile devices, and to allow a litigant to access the data in and make forensic images of the opposing side's personal email accounts, on so little a showing for cause as is made here, weighs against the public interest.

## IV. Laptop Computers

The Court further finds that the motion for a TRO is not the proper vehicle for plaintiff's request for the return of Lee and Jang's laptop computers. It is unclear what irreparable harm looms. Plaintiff alleges that Lee deleted all of the data from her C2 email account and her C2 G Suite account on her last day of work in February 2018. Compl. ¶¶ 50-51. If she has already deleted all of her data, then it is unclear what further harm Lee could cause through her C2 laptop. Meanwhile, plaintiff alleges that "C2 was able to obtain and review Jang's C2 G Suite account[,]" including her work emails. *Id.* ¶ 52. Thus, if C2 has access to Jang's C2 data and emails, then it is unclear what irreparable harm would be avoided by Jang returning her laptop computer at this very moment. At the hearing, plaintiff conceded that defendants' present possession of the laptops does not give them ongoing access to C2's data, because plaintiff has cut off defendants' online access to their G Suite accounts.

Still, the Court has some reservations about denying the TRO with respect to the request that defendants be ordered to return the laptops. At the hearing, defendants agreed that the laptops belong to plaintiff. Defense counsel instead voiced concern that one of the laptops contains personal and proprietary information that does not belong to plaintiff and for that reason does not wish to turn it over.

As discussed at the hearing, defendants' concerns about returning the laptops may be addressed through a proper protective order. The Court encourages the parties to meet and confer on this point and to propose a process for the return of the laptops in their joint case management statement, due to the Court by August 10, 2018. *See* Dkt. No. 17 at 1.

## V. Expedited Discovery and Preservation of Documents

Plaintiff also seeks early discovery under Federal Rule of Civil Procedure 26(d). Mot. for TRO at 21-22. At the hearing, plaintiff stated that of all the requests it made in its motion for a TRO, the request for expedited discovery was the most important. Plaintiff argues that it needs discovery in order to learn the "scope of Defendants' misappropriation and whether they still have access to other C2 data" and states that "there is reasonable concern that the evidence at issue may be subject to spoliation." *Id.* at 21.

Although the Court DENIES plaintiff's motion for a TRO, it will GRANT the request for expedited discovery based on the nature of the allegations in this case. As discussed at the hearing, the parties may begin to propound discovery as of the date of the hearing, July 6, 2018. Any further scheduling matters will be discussed at the initial case management conference set for August 17, 2018.

Plaintiff is clearly concerned that defendants will destroy the evidence plaintiff needs to prove its claims. The Court is troubled by the allegations in the complaint, in particular the allegation that defendants Lee and Hong deleted all of their work emails and work product on their final day of employment at C2. The Court hereby reminds defendants that they are under a duty to preserve documents relevant to this litigation. "As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) (Patel, J.) (citations omitted). "Courts may sanction parties responsible for spoliation of evidence[,]" even if the evidence was not destroyed in "bad faith." *Id.* at 1066 (citations omitted). The Court will not look kindly on any party that violates its duty to preserve.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court DENIES plaintiff's motion for TRO and order to show cause why a preliminary injunction should not issue. The Court GRANTS the request for expedited discovery. The parties may begin propounding discovery as of July 6, 2018. If the return of plaintiff's laptop computers remains outstanding, the parties shall address the process for the return of the laptops in their joint case management statement, due to the Court by August 10, 2018.

**IT IS SO ORDERED**.

Dated: July 6, 2018

_____
SUSAN ILLSTON
United States District Judge