UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C2 EDUCATIONAL SYSTEMS, INC., <br> Plaintiff, <br> v. <br> SUNNY LEE, et al., <br> Defendants. | Case No. 18-cv-02920-SI <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND COMPLAINT** <br><br> Re: Dkt. No. 54 |

Currently before the Court is plaintiff's motion for leave to file an amended complaint. Dkt. No. 54. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and VACATES the hearing set for April 19, 2019. Having considered the papers submitted, and for the reasons discussed below, the Court GRANTS IN PART AND DENIES IN PART plaintiff's motion to amend the complaint. **Plaintiff shall file its First Amended Complaint no later than April 18, 2019.**

**BACKGROUND**

On May 17, 2018, plaintiff C2 Educational Systems, Inc. ("C2") filed a complaint for injunctive relief and damages against defendants Sunny Lee, Kyung Hye Debbie Hong, and So Yeon Jang related to defendants' alleged formation of a competing entity roughly six months before defendants terminated their employment with C2. Dkt. No. 1. ("Compl.") at 1. According to the complaint, "C2 is engaged in the business of providing academic tutoring, standardized test preparation, and college admissions counseling." *Id.* ¶ 9. C2 has over 180 centers nationwide. *Id.* This includes the Cupertino and Almaden Centers located in San Jose, California. *Id.* ¶¶ 9, 14, 16.

As alleged in the complaint, defendants Lee, Hong, and Jang worked for C2 for ten, four,

and nine and a half years, respectively. *Id.* ¶¶ 12, 15, 18. In September 2017, while still employed by C2, they formed an entity called Core Academics, LLC. *Id.* ¶¶ 44-45. Defendants each resigned from C2 in February 2018. *Id.* ¶¶ 12, 15, 18. Core Academics now competes with C2, employing former teachers and employees of C2, using similar signage, and holding its staff "out to prospective customers as C2 staff[.]" *Id.* ¶¶ 47, 75, 82-84. Core Academics also occupies "the exact same space C2's Cupertino Center had occupied for years[,]" after C2 vacated that office space in November 2017. *Id.* ¶¶ 35, 72.

Plaintiff alleged in the complaint that it has suffered financially because of actions defendants undertook while still employed at C2. For instance, although the Cupertino Center "is one of C2's highest performing centers," in the first quarter of 2018, "the Cupertino Center's financial results were abysmal[.]" *Id.* ¶¶ 32, 59. Its number of "leads" was cut almost in half from October 2017 through February 2018.[1] *Id.* ¶ 60. Plaintiff also alleged that defendant Lee approved numerous refund requests to customers at 100% of the tuition paid, even though C2's refund policies never allow a refund of more than 70% of a customer's tuition. *Id.* ¶¶ 67-68. During the last quarter of 2017, Lee allegedly enrolled students at C2 but omitted the page of the terms and conditions that capped refunds at 70% of tuition, thereby "provid[ing] a valuable benefit to Core Academics and ma[king] it easier for Core Academics to compete with C2's Cupertino Center." *Id.* ¶¶ 66-70. As a result, C2's refunds during March 2018 increased more than 500% from the prior three months combined. *Id.* ¶ 71.

In the complaint, plaintiff brings three claims for relief: (1) breach of the duty of loyalty, (2) violation of the California Computer Data and Access Fraud Act, and (3) misappropriation and conversion of property.

On March 14, 2019, plaintiff filed a motion to amend the complaint seeking leave to add Core Academics, LLC as a defendant in the case and to add five additional claims: (4) breach of

---

[1] New "leads" are entered into a database called Smart2 when a potential customer first contacts C2. Compl. ¶¶ 29-30. The lead is then "either converted to an enrolled student or archived if the lead does not result in a sale." *Id.* ¶ 30. Plaintiff alleges that from December 2017 through February 2018 "the percentage of archived to enrolled leads doubled" because defendant Lee and "Young" increased how often they changed a lead's status to archived. *Id.* ¶¶ 61-62. "Young" is not mentioned elsewhere in the complaint.

2

1  contract, (5) tortious interference with employee contracts, (6) tortious interference with customer
2  contracts, (7) tortious interference with prospective economic advantage, and (8) aiding and
3  abetting the breach of duty of loyalty. Dkt. No. 54 ("Mot."). Defendant opposes, arguing that
4  amendment would be futile and that plaintiff's motion is for the purposes of delay, and plaintiff
5  has filed a reply to the opposition. Dkt. Nos. 57 ("Opp'n"), 58 ("Reply"). Non-expert discovery
6  in this case was originally set to close on March 8, 2019, but the Court has twice extended that
7  deadline. Discovery is now set to close on April 19, 2019, the same day that plaintiff set this
8  motion for hearing. *See* Dkt. Nos. 44, 50, 64.

## LEGAL STANDARD

Federal Rule of Civil Procedure 15 governs amendment of the pleadings. It provides that if a responsive pleading has already been filed, the party seeking amendment "may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule reflects an underlying policy that disputes should be determined on their merits, and not on the technicalities of pleading rules. *See Foman v. Davis*, 371 U.S. 178, 181-82 (1962). Accordingly, the Court must be generous in granting leave to amend. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (finding leave to amend should be granted with "extreme liberality"); *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

There are several accepted reasons to deny leave to amend, including the presence of bad faith on the part of the plaintiff, undue delay, prejudice to the defendant, futility of amendment, and previous amendments. *See Ascon Props.*, 866 F.2d at 1160; *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809-10 (9th Cir. 1988). Courts do not ordinarily consider the validity of a proposed amended pleading in deciding whether to grant leave to amend, but leave may be denied if the proposed amendment is futile or would be subject to dismissal. *See Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991).

These factors do not carry equal weight; rather, "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d

3

1048, 1052 (9th Cir. 2003) (citation omitted). "Absent prejudice, or a strong showing of any of the remaining . . . factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id.*

"The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 187 (9th Cir. 1987) (citation omitted). The prejudice "must be substantial." *Morongo Band of Mission Indians,* 893 F.2d at 1079. "Bald assertions of prejudice cannot overcome the strong policy reflected in Rule 15(a) to 'facilitate a proper disposition on the merits.'" *Hurn v. Ret. Fund Trust of Plumbing, Heating & Piping Indus. of S. California,* 648 F.2d 1252, 1254 (9th Cir. 1981) (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957)).

**DISCUSSION**

For the reasons discussed below, the Court will GRANT plaintiff leave to amend the complaint to add Core Academics, LLC as a defendant and to add a claim for tortious interference with customer contracts. Plaintiff's request to add the remaining claims is DENIED.

**I.  Adding Core Academics, LLC as a Defendant**

Defendants argue that Core Academics, LLC should not be added as a party to this case because "[t]he three current Defendants are the only owners of Core Academics, LLC" and that "[a]dding Core does not substantively change the claims, or the relief Plaintiff would be entitled to in the unlikely event its claims are unsuccessful." Opp'n at 5. Although defendants do not use the term "bad faith," they argue that plaintiff's "real purpose" for adding Core Academics "is Plaintiff's use of litigation as a tool to harass and intimidate Plaintiff's former employees into giving up their competing business." *Id.*

The Ninth Circuit has found a lack of bad faith where the party moving to amend pleadings "offered substantial competent evidence" to explain its actions. *See Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). Here, defendants have failed to point to any evidence of bad faith, let alone substantial competent evidence.

Nor have defendants shown any prejudice if Core Academics is added to the case. In fact,

4

defendants' argument, that adding Core Academics changes nothing substantive about the claims or the relief, supports plaintiff's point that defendants will not be prejudiced by the addition of this party. For these reasons, the Court GRANTS plaintiff's request to add Core Academics, LLC as a defendant.

## II. Adding New Claims

Defendants argue that plaintiff's proposed new claims "are all based on information both known and alleged at the time of the original Complaint and there is no justification for the undue delay in the proceedings the amendment would cause." Opp'n at 3.

Most courts hold delay alone is not enough to support denial of a motion for leave to amend. *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999). However, "the longer the delay, the greater the presumption against granting leave to amend." *Johnson v. Cypress Hill*, 641 F.3d 867, 872 (7th Cir. 2011) (internal quotes omitted). Leave to amend has been denied where the moving party either knew or should have known the facts on which the amendment is based when drafting the original pleading but did not include them in the original pleading. *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994), *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017).

The Court finds that plaintiff's proposed new Claims 4, 5, 7, and 8 are based on facts that plaintiff knew or should have known when it filed the original complaint and for that reason will DENY plaintiff leave to add these claims. The Court will GRANT plaintiff leave to amend the complaint to add proposed Claim 6, which contains allegations not brought in the original complaint and that plaintiff learned of only through discovery.

### A. Claims 4, 5, 7, and 8

Plaintiff's proposed Claims 4, 5, 7, and 8 are claims for breach of contract, tortious interference with employee contracts, tortious interference with prospective economic advantage, and aiding and abetting breach of duty of loyalty, respectively.

Claim 4, for breach of contract, is premised on the allegation that defendants Lee and Hong

5

breached the non-competition agreements they signed as a condition of their employment with plaintiff. Plaintiff has added to the proposed amended complaint language from Lee's non-competition agreement and from Hong's non-competition and at-will employment agreements. *See* Mot., Ex. B ¶¶ 41-47. Plaintiff seeks to allege that "Lee and Hong breached their Agreements by misappropriating and disclosing C2's confidential and proprietary information to set up a competing business, competing against C2 during their employment with C2, and soliciting C2's current and former employees and customers on behalf of Core Academics while still employed with C2 and after." *Id.* ¶ 122.

Yet the original complaint already contains allegations that defendants misappropriated C2's property in order to set up a competing business and that they did so during their employment with C2. The complaint alleges, for instance, that "Core Academics engaged in business that was competitive with C2 beginning on September 26, 2017, and continuing up to and past the dates on which Lee, Hong, and Jang resigned from their employment with C2" in February 2018. Compl. ¶¶ 12, 15, 18, 47. The complaint further alleges that "each and every current Core Academics teacher is a former teacher and employee of C2" and that Jang forwarded confidential C2 information to her personal email on at least two occasions. *Id.* ¶¶ 53-54, 75. Moreover, plaintiff was a party to the non-competition and at-will employment agreements that form the basis of the breach of contract claim plaintiff now seeks to bring. "[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Kaplan*, 49 F.3d at 1370 (citation omitted). The Court finds that plaintiff knew or should have known of the facts underlying Claim 4 and will not allow plaintiff to add the claim at this stage of the case, with the close of discovery imminent.[2]

Plaintiff's proposed Claim 5 is for tortious interference with employee contracts. The basis of this claim is that "defendants unlawfully misappropriated and exploited C2's confidential

---

[2] The Court does not reach defendants' alternative argument that amending the complaint to add Claim 4 "would be futile because it is based on non-compete agreements which are indisputably unenforceable under California law." *See* Opp'n at 2.

6

and proprietary information to solicit and hire C2's employees and to intentionally induce and encourage the breach or disruption of these contractual employment relationships for their own benefit." Mot., Ex. B ¶ 129. Plaintiff seeks leave to add allegations that, for instance, while still employed by C2, Lee and Jang interviewed Mark Cha and "also solicited and hired former C2 employees Nelson Hsu, Dr. Jianzhong Li, and Sung to leave their employment with C2 to work for Core Academics."[3] *Id.* ¶ 84. The original complaint makes similar allegations, if with less detail. The original complaint states that Core Academics advertises "Dr. Li, Mark, Nelson, Sophia, Hanna, and Joseph" as its teachers and states that "each and every current Core Academics teacher is a former teacher and employee of C2." Compl. ¶ 75. The original complaint also identifies several specific instances where defendants told C2 employees to leave their employment. For instance, it describes how during her employment with C2, defendant Jang "copied her personal email when responding to a then current C2 teacher" and informed him that she would "be wrapping up her time here at C2" and agreed to let him know if the "college admission essay clinic idea that [she] w[as] telling [him] about last fall comes together." *Id.* ¶ 54. From the allegations of the original complaint, the Court concludes that plaintiff was aware of or should have been aware of facts supporting a claim for tortious interference with employee contracts and for that reason will not allow plaintiff to amend the complaint to add that claim at this time.

Plaintiff's proposed Claim 7 is for tortious interference with prospective economic advantage. Plaintiff seeks to add allegations that defendants interfered "with C2's current and prospective economic advantage with its customers." Mot., Ex. B ¶¶ 142-148. Yet the original complaint already contains numerous factual allegations relevant to such a claim. In the original complaint, plaintiff alleges that from October 2017 through February 2018 defendants Lee and

---

[3] The proposed amended complaint also contains an allegation that defendant Hong contacted Nelson Hsu and asked him to get an excuse from work at C2 in order to teach at Core Academics on that particular day. Mot., Ex. B ¶ 85. However, this incident occurred after Hong left her employment with C2, *see id.* ¶ 15, and plaintiff states that it is only seeking to add allegations of wrongful actions that occurred while defendants were still C2 employees. *See* Reply at 1.

1 Young stopped entering "leads" on potential new customers into the C2 database and that from
2 December 2017 through February 2018 "the percentage of archived to enrolled leads doubled."
3 Compl. ¶¶ 60-62. The complaint also alleges "that during the last quarter of calendar year 2017,
4 Lee enrolled students but omitted the page of C2's Terms and Conditions containing the Refund
5 Policies[;]" that Lee "had approved numerous refund requests that requested refunds of 100% of
6 the tuition paid" in contravention of C2's Refund Policies; and that as a result C2's refunds during
7 March 2018 increased over 500% over the prior three months combined. *Id.* ¶¶ 66-71. On the
8 basis of these facts, plaintiff could have brought a claim for tortious interference with prospective
9 economic advantage but did not. The Court will not allow plaintiff to amend the case at this time
10 to state such a claim.

11 Likewise, plaintiff has alleged no facts to support its proposed Claim 8 (aiding and abetting
12 breach of duty of loyalty) that would not have been available to it at the time it filed the original
13 complaint. That claim alleges only generally that "Defendants had actual knowledge of the
14 fiduciary duties and duties of loyalty that the Individual Defendants owed to C2, both individually
15 and collectively, because they were aware of their employment and positions with C2" and that
16 "Defendants had actual knowledge of the Individual Defendants' breaches of their fiduciary duties
17 and duties of loyalty to C2, both individually and collectively, and knowingly and willfully aided
18 and abetted the Individual Defendants by providing substantial assistance or encouragement in
19 breaching their fiduciary duties and duties of loyalty to C2 . . . ." Mot., Ex. B ¶¶ 150-151. The
20 Court sees no reason plaintiff could not have brought this claim at the outset of the case. Its
21 original complaint was premised on the allegation that defendants formed a competing company
22 while still employed at C2. Plaintiff described the case as "an action for damages and injunctive
23 relief based on C2's claims against its former employees for . . . breach of fiduciary duty/duty of
24 loyalty" and brought a claim for breach of the duty of loyalty. Compl. ¶¶ 1, 85-90. Accordingly,
25 the Court will deny plaintiff leave to amend the complaint to add Claim 8.

### B. Claim 6

Plaintiff also seeks to bring as Claim 6 a claim for tortious interference with customer

1  contracts. Plaintiff alleges that "Defendants unlawfully misappropriated and exploited C2's
2  confidential and proprietary information to solicit business from C2's customers and to
3  intentionally induce and encourage the breach or disruption of these contractual relationships for
4  their own benefit." Mot., Ex. B ¶ 137. More specifically, plaintiff seeks to add allegations that
5  "while employed with C2 and after, Lee, Hong, and Jang solicited C2's current and former
6  customers" and that "Hong, with the assistance of Lee and Jang who were still employed by C2,
7  solicited and enrolled the first two customers for Core Academics, who were former C2
8  customers." *Id.* ¶¶ 91-92. Plaintiff states in its motion that it learned this information during
9  discovery. Mot. at 3. Although the original complaint implies that defendants were attempting to
10 solicit C2 customers by, for instance, approving refund requests at C2 and moving into C2's
11 former office space, the original complaint falls short of alleging that defendants solicited and
12 enrolled C2 customers while employed at C2.

13 Defendants argue that Claims 4 through 8 should not be added because there is no
14 justification for the undue delay. To the extent there has been delay in adding this claim, the Court
15 notes that it was not until April 1, 2019, that defendants lifted the "Attorneys' Eyes Only"
16 designation from materials on the C2 laptops that Lee and Jang retained when they left their
17 employment. *See* Dkt. No. 64. The failure to lift this designation sooner, despite an apparent
18 agreement to do so in October 2018, has resulted in two extensions of the discovery deadline. *See
19 id.*; Dkt. Nos. 49, 50. Under these circumstances, where plaintiff learned of the facts underlying
20 its claim during discovery and where delay by the opposing party has contributed to discovery
21 delays overall, the Court will allow plaintiff to add a claim for tortious interference with customer
22 contracts.

23 Plaintiff has also sought to amend its prayer for relief. Plaintiff may amend its prayer for
24 relief based on the addition of a claim for tortious interference with customer contracts.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS IN PART AND DENIES IN PART
plaintiff's motion to amend the complaint. Plaintiff may file a First Amended Complaint to add

9

Core Academics, LLC as a defendant and to add a claim for tortious interference with customer contracts.[4] **Plaintiff shall file its First Amended Complaint no later than April 18, 2019.**

**IT IS SO ORDERED**.

Dated: April 16, 2019

_____
SUSAN ILLSTON
United States District Judge

---

[4] The parties are reminded that Civil Local Rule 5-1(e) requires that "[d]ocuments which the filer has in an electronic format must be converted to PDF from the word processing original, *not scanned*,to permit text searches and to facilitate transmission and retrieval." Civil L.R. 5-1(e)(2) (emphasis added). Plaintiff shall file its First Amended Complaint (and all future documents in this case) in accordance with the local rules.