UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C2 EDUCATIONAL SYSTEMS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SUNNY LEE, et al.,<br><br>Defendants. | Case No. 18-cv-02920-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 76 |

Defendants' motion for summary judgment came on for hearing on July 12, 2019. Having carefully considered the papers filed and the arguments made, the Court hereby rules as follows.

**BACKGROUND**

On May 17, 2018, plaintiff C2 Educational Systems, Inc. ("C2") filed this action based on diversity jurisdiction against defendants Sunny Lee, Kyung Hye Debbie Hong, and So Yeon Jang. Dkt. No. 1. Plaintiff is a company that provides academic tutoring, standardized test preparation, and college admissions counseling at over 180 centers nationwide. Pl.'s Ex. 11, Lobo Decl. ¶ 6. By this lawsuit, plaintiff alleges that defendants, who are former employees of plaintiff, began developing a competing business (called Core Academics, LLC) while they were still employed by plaintiff. Because the parties dispute many of the facts at issue in this case, the Court recites the relevant facts in further detail in the Discussion section below.

On April 19, 2019, with the Court's leave, plaintiff filed its first amended complaint. Dkt. Nos. 65, 66. In it, plaintiff adds Core Academics, LLC ("Core") as a defendant and brings the following claims for relief: (1) breach of duty of loyalty; (2) violation of the California Computer Data and Access Fraud Act; (3) misappropriation and conversion of property; and (4) tortious

interference with customer contracts. A jury trial in this case is set to begin on October 7, 2019.

**LEGAL STANDARD**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to produce evidence showing the absence of a genuine issue of material fact. *Id.* at 325. Rather, the burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Id.*

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)(4).

The parties agree that in this action based on diversity jurisdiction, the substantive law of the state of California applies. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

**DISCUSSION**

Defendants move for summary judgment on all four of plaintiff's claims. If the claims survive summary judgment, defendants ask that the Court "grant summary adjudication as to punitive damages because Plaintiff has no evidence that the Defendants acted willfully or maliciously." Mot. at 1.

Both parties agree there are numerous facts in dispute. At the hearing, defendants asserted that those facts are not material, but they forwarded no argument showing this to be the case, whether at the hearing or in their papers. Plaintiff has argued in response that the disputed facts *are* material to resolution of its claims. Because the Court agrees with plaintiff, the Court will DENY the majority of defendants' motion for summary judgment, with the exception of GRANTING summary judgment on the claim for breach of the duty of loyalty as to defendant Core Academics LLC only.

**I. Breach of Duty of Loyalty**

"The elements of a cause of action for breach of a duty of loyalty . . . are as follows: (1) the existence of a relationship giving rise to a duty of loyalty; (2) one or more breaches of that duty; and (3) damage proximately caused by that breach." *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 410 (2007) (citation omitted). California courts have held that "[a]n employee does not breach his duty of loyalty by *preparing* to compete with his employer." *Mamou v. Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686, 719 (2008) (citations omitted). Nevertheless, "while an employee may secretly incorporate a competing business prior to departing, the employee may not use his or her principal's time, facilities or proprietary secrets to build the competing business[.]" *Id.* (quoting *Chemfab Corp. v. Integrated Linear Techs. Inc.*, 693 N.Y.S. 2d 752, 754 (1999)).

The main thrust of the parties' dispute here is whether defendants began competing with plaintiff while still employed by plaintiff, which would constitute a breach of their duty of loyalty, or whether defendants merely began lawful preparations to compete.

On the present record, the Court finds that disputes of fact remain as to whether defendants breached their duty of loyalty to C2. For instance, plaintiff has pointed to deposition testimony from several C2 teachers stating that defendants recruited them to teach for Core while defendants were

3

still employed at C2. It is undisputed that defendants Jang, Hong, and Lee left their employment at C2 on February 3, February 9 or 14,[1] and February 14, 2018, respectively. *See* Pl.'s Ex. 7, Jang Dep. at 21:20-22:7; Defs.' Ex. J, Hong Dep. at 42:17-43:3; Pl.'s Ex. 8, Lee Dep. at 53:14-17. And yet Mark Cha, a teacher for C2, testified that he received an offer letter to teach at Core on January 31, 2018. *See* Pl.'s Ex. 3, Cha Dep. at 92:23-93:7. Cha's offer letter gave him a start date of February 12. *Id.* at 108:1-16. Defendants dispute this, stating in their motion that "Core began hiring staff in late February and March of 2018." *See* Mot. at 3. For evidence, defendants cite the April 18, 2019 deposition transcript of defendant Jang (defendants' Exhibit L) at pages 100:13-101:13 but they do not attach page 101 to Exhibit L, and page 100 contains no testimony regarding when defendants began hiring teachers for Core.

"The determination of the particular factual circumstances and the application of the ethical standards of fairness and good faith required of a fiduciary in a given situation is for the trier of facts." *Sequoia Vacuum Sys. v. Stransky*, 229 Cal. App. 2d 281, 288 (1964) (citing *Indus. Indem. Co. v. Golden State Co.*, 117 Cal. App. 2d 519, 534 (1953)). Here, a reasonable trier of fact could conclude that defendants went beyond mere preparation for competition by hiring plaintiff's teachers while defendants were still employed by plaintiff. *See id.* at 287 (an agent "may plan and develop his competitive enterprise during the course of his agency only where the particular activity engaged in is not against the best interests of his principal"); *cf. Hung Que*, 150 Cal. App. 4th at 417 (breach of duty of loyalty may exist where an agent diverts the principal's customers to the agent's new business "while ostensibly remaining [the principal's] employees or agents").

Accordingly, the Court DENIES defendants' motion for summary judgment on the claim for breach of the duty of loyalty.[2]

---

[1] Hong testified that the last day she actually worked at C2 was February 9, 2018, but that she was subsequently paid four days of "PTO" (paid time off) at the end of her employment. Pl.'s Ex. 5, Hong Dep. at 43:1-6.

[2] Defendants make the additional argument that this claim is preempted by the California Uniform Trade Secrets Act. However, as the above allegation regarding recruitment and hiring of C2 teachers illustrates, plaintiff has come forth with disputed material facts beyond those involving trade secrets, and so defendants' preemption argument is inapplicable.

4

## II. California Computer Data and Access Fraud Act (Cal. Penal Code § 502)

Defendants argue that "Plaintiff makes bold allegations that Defendants misused [their C2] laptops by deleting all C2 emails to which they had access before leaving their employment. . . . At best, when defendant Hong was asked about this issue in her deposition, she testified she deleted *some* personal emails from her C2 account. She, however[,] denied deleting *all* emails and she remains prepared to testify that what information she did delete had nothing to do with C2's operations. Lee testified that she deleted her personal C2 emails because they were not needed by C2 to continue operating the Cupertino Center." Mot. at 13-14.

Defendants' very motion on this claim thus reveals that there is a dispute between the parties as to whether defendants Lee and Hong deleted all of their C2 emails and whether those emails were needed by C2. In its opposition, plaintiff also points to a broader problem with data deletion. Plaintiff states that "Lee and Hong deleted all of the data from not only their C2 email accounts, but also the entirety of their C2 G Suite accounts, which included documents, spreadsheets, slides and other C2 business documents, on their last day of work for C2, February 14, 2018." Opp'n at 10.[3] Plaintiff states that it expended "time and resources in attempting to recover the emails and data contained in Lee and Hong's C2 G Suite accounts" but was unable to do so. Dkt. No. 82-41, Urban Decl. ¶ 15.

Defendants make the additional argument that plaintiff's claim must fail due to the scope of employment exception in the California Computer Data and Access Fraud Act ("CDAFA"), California Penal Code Section 502(h). But as plaintiff notes, "[o]rdinarily, the determination whether an employee has acted within the scope of employment presents a question of fact; it becomes a question of law . . . when 'the facts are undisputed and no conflicting inferences are possible.'" *See Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 213 (1991) (quoting *Perez v. Van Groningen & Sons, Inc.*, 41 Cal. 3d 962, 968 (1986)). Because the relevant facts here are not undisputed, the Court declines defendants' request to determine as a matter of law that defendants were acting within the scope of their employment when they deleted their C2 emails and/or C2 G

---
[3] Plaintiff's brief cites to the declaration of Andrew Lobo, but at the hearing plaintiff clarified that it is actually the declaration of Michael Urban that contains this information.

Suite accounts.

Defendants also state that plaintiff has no claim under the CDAFA because it cannot prove damages, citing *Mintz v. Mark Barelstein & Assoc. Inc.*, 906 F. Supp. 2d 1017 (C.D. Cal. 2012).[4] Yet that case does not support defendants' position. In explaining that the plaintiff had "experienced sufficient damage to support a private right of action" under the CDAFA, the *Mintz* court quoted from a decision by Judge Ware of this district: "Section 502 sets no threshold level of damage or loss that must be reached to impart standing to bring suit. Under the plain language of the statute, any amount of damage or loss may be sufficient." *Id.* at 1032 (quoting *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780-JW, 2010 WL 3291750, at *4 (N.D. Cal. July 20, 2010)). Accordingly, the plaintiff had proven damages where it was undisputed that he "spent some time restoring his Gmail password and investigating who had hacked the Gmail account." *Id.*; *see also Power Ventures*, 2010 WL 3291750, at *4 (rejecting the defendants' argument that "a few clicks of a mouse . . . and ten keystrokes" would not constitute sufficient damages for standing under the CDAFA).

Here, it is far from undisputed that plaintiff suffered no damage from defendants' actions in allegedly deleting emails and the contents of their C2 G Suite accounts. Plaintiff has come forward with disputed facts that, if believed, would support a jury's finding that plaintiff suffered damage within the meaning of the CDAFA. *See, e.g.*, Urban Decl. ¶¶ 14-15.

### III. Misappropriation and Conversion of Property

In California, conversion is defined as "the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of

---

[4] The statute states that "the owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation of any of the provisions of subdivision (c) may bring a civil action against the violator for compensatory damages . . . ." Cal. Penal Code § 502(e)(1). "Compensatory damages" is defined to "include any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." *Id.*

6

property rights; and (3) damages[.]" *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015) (citation omitted).

Defendants assert that plaintiff has no claim for conversion, focusing on the allegation that defendants Lee and Jang failed to return C2 company laptops when their employment ended. In its opposition, plaintiff identifies a number of other items besides the laptops that it claims defendants unlawfully converted. This includes the allegation that defendants "delet[ed] data files from the computers C2 permitted them to use during their employment with C2 without C2's authorization[.]" *See* Opp'n at 20. Plaintiff has provided a declaration from its Vice President of Information Technology and Development Services that "Lee and Hong deleted . . . the entirety of their C2 G Suite accounts, which included documents, spreadsheets, slides and other C2 business documents, on their last day of work for C2, February 14, 2018." Urban Decl. ¶ 12. While defendants argue in their motion that plaintiff could still access the "Smart2 database" even without the laptops of Lee and Jang, *see* Mot. at 19, the G Suite account is distinct from the Smart2 database. The former is an account in which the user could store word files, spreadsheets, PowerPoints, etc., while the latter is a database for entering client leads. *See* Pl.'s Ex. 8, Lee Dep. at 73:11-74:12, 83:19-84:3. Plaintiff's conversion claim thus involves more than the laptops and Smart2 database, and defendants have failed to point to an absence of evidence supporting this claim.

### IV. Tortious Interference with Customer Contracts

In California, the elements of the tort of intentional interference with contractual relations are: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990) (citations omitted). As to this claim, the Court again finds that defendants have not shown they are entitled to summary judgment because triable issues of fact remain.

For instance, defendant Hong testified that "J.C."[5] was the first customer to enroll at Core,

---

[5] Because the client is a minor, the Court refers to him by initials only.

7

and that she enrolled him there on February 10, 2018. Pl.'s Ex. 5, Hong Dep. at 126:4-13. When asked how his family found out about Core, Hong testified, "I think they walked in." *Id.* at 132:3-5. At defendant Lee's deposition, Lee agreed that they were the first customers to enroll at Core. Pl.'s Ex. 8, Lee Dep. at 156:1-12. Lee further testified that she "knew of" J.C. prior to his enrollment at Core because "he was at C2. They were very picky clients, and they were very reluctant to enroll. So, I don't offer a money back guarantee, but I offered money back guarantee."[6] *Id.* at 156:17-24. She testified that J.C. and his family were students at the C2 Cupertino Center, where she was the Center Director, and that she had enrolled them there. *Id.* at 29:20-30:2, 157:3-8. Lee also testified that she does not recall saying anything to them about Core. *Id.* at 157:9-15. Plaintiff points to Lee's testimony in support of its argument that a reasonable jury could find that J.C.'s family learned about Core from Lee, and the Court finds that the evidence is disputed on this point.

Additionally, plaintiff has come forward with a declaration from Pam Dhillon, currently a Regional Vice President of C2 who was serving as Regional Director at the time defendants resigned. *See* Dkt. No. 82-42, Dhillon Decl. ¶ 4. Dhillon declares that C2's Refund Policies, which students sign when they enroll, limits refunds to a maximum of 70% except in very limited circumstances. *Id.* ¶¶ 6-7. She states that after defendant Lee "had left her employment with C2, C2 learned that Lee had approved numerous refund requests that requested refunds of 100% of the tuition paid, and left those approved requests at the Cupertino Center." *Id.* ¶ 8. She explains that Lee, as Cupertino Center director, was "solely responsible for new enrollments and renewals" and that "[t]he refund dollars issued for students at C2's Cupertino center in March 2018 [i.e., the month after Lee resigned] were larger than any other month in 2017 or 2018 by a factor of two (2)." *Id.* ¶¶ 16, 20, 22.

This evidence is sufficient to show that triable issues of material fact remain on the claim for interference with contractual relations.

---

[6] It is unclear from the transcript whether Lee is referring to the client's enrollment at C2 or at Core.

## V. Core Academics as a Defendant

Defendants further argue, without citation to case law, that Core is not an appropriate defendant on any of the claims. *See* Mot. at 17. The Court agrees with defendants only as to the claim for breach of duty of loyalty. That claim requires proof of the existence of an agent-principal or similar relationship. *See Huong Que*, 150 Cal. App. 4th at 410 ("The duty of loyalty arises not from a contract but from a relationship . . . ."). "Agency is 'the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to so act.'" *Id.* at 410-11 (quoting Rest. 3d, Agency, § 1.01). Under no construction of the facts could Core, formed as a competing entity to C2, be considered an agent of C2.

As to the remaining claims, however, defendants' arguments turn on the question of when C2 began operating. For instance, defendants state that there can be no claim for violation of the CDAFA because "during the time of the alleged violations of this act (i.e. when Defendants deleted certain emails from their C2 email accounts), Core was not yet in operation." *See* Mot. at 17. However, when Core began operating is very much in dispute, as evidenced, for instance, by defendants' assertion that it did not begin hiring teachers until late February and March 2018, while plaintiff asserts that defendants offered to hire a C2 teacher away from C2 in January 2018.

Accordingly, the Court GRANTS defendants' motion for summary judgment on the breach of duty of loyalty claim as against defendant Core Academics, LLC *only* and DENIES the motion for summary judgment in Core's favor on the remaining claims.

## VI. Punitive Damages

California Civil Code Section 3294 allows a jury to award exemplary (punitive) damages "[i]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice . . . ." Cal. Civ. Code § 3294(a). Defendants move for summary judgment on plaintiff's request for punitive damages, arguing that "[t]he undisputed facts in this case make clear that there is no

9

evidence, let alone clear and convincing evidence, of malice, oppression, or fraud attributable to Defendants." Mot. at 22. As the above discussion should make clear, the parties hold widely different views of the facts in this case, which is why the Court finds summary judgment is inappropriate. Plaintiff's allegations are rife with allegations of malice, oppression, and fraud. Whether the jury will believe these allegations is a matter for another day. At this stage, having found that disputes of fact exist that the jury must resolve, the Court declines to dismiss plaintiff's request for punitive damages.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment on the breach of duty of loyalty claim as against defendant Core Academics, LLC only. The balance of the motion is DENIED. The Court will issue a separate order on the parties' administrative motions to seal.

**IT IS SO ORDERED**.

Dated: July 17, 2019

SUSAN ILLSTON
United States District Judge